JOHNSON, Judge.
This is an appeal by the plaintiffs below from a directed verdict in favor of the defendants below entered by the trial judge at the close of the plaintiffs’ case.
The basic complaint of the plaintiffs seems to be that a parking lot belonging to the plaintiffs had been optioned to F & H Corporation for $40,000, said option to be exercised at any time within 10 years, but was bought for only $12,000.00 by the defendants. The plaintiffs now contend that it was their understanding that they were to receive a mortgage for $28,000, representing the balance of the option purchase price of $40,000. That they relied upon their attorneys, Katz & Katz to properly protect their interest in the matter of the mortgage.
Each of the Katz deny that they were attorneys for the plaintiffs in the transaction, but admit that Harry Katz, Jr. was stockholder and later principally sole owner of F & H Corporation which had purchased the parking lot.
The principal witness for the plaintiffs, a Mr. Kaye, testified that he was originally one of the incorporators and stockholders of F & H Corporation.
*425 That F & H had a very favorable lease on the parking lot in question, which lease contained the 10 year option. Also, Mr. Kaye testified that he bought the parking lot in his name individually, although he knew F & H had a lease and option. He paid $12,000 for the lot, although Mr. Siess wanted $15,000. It seems Mr. Siess was in financial difficulty and apparently sacrificing some property for ready cash. Mr. Kaye admits that neither Mr. D. Siess nor Jack Siess, mentioned any mortgage for the difference between the $12,000 cash paid and the $40,000 suggested sales price as contained in the mortgage. Also, it appears that no one mentioned any mortgage to Mr. Katz. The evidence shows that when Mr. Kaye advised Mr. Harry Katz, Jr. that the parking lot could be bought for $15,000 cash, immediately, Mr. Katz suggested that Mr. Kaye bargain with Siess and tell him he could only raise $12,000.00. This was done and Mr. Katz gave the $12,000 to Mr. Kaye to pay Mr. Siess for the lot.
A fee of $1000.00 was charged by Harry Katz, Jr. which he claims was a “finder’s fee,” in helping the Siess family make the sale and get some cash. This fee, the plaintiffs contend was an attorney fee for representing them in the whole transaction, but the evidence shows that the Siess family or at least part of them knew early in the game that Harry Katz, Jr. was the real party in interest in F & H Corporation and in the purchase of the hotel and parking lot property.
■At the close of plaintiffs’ case, the defendants moved for a directed verdict on all issues. The primary grounds of said motion were: there was no evidence of fraud, or attorney-client relationship.
The trial court concluded, and we think properly so, that there was no testimony from which the jury would properly infer or find that the relationship of attorney and client existed, but on the contrary, that the plaintiffs had treated the defendants as somebody willing to buy their property which they were trying to sell.
The court then pointed out that the plaintiffs having failed to establish the attorney-client relationship, the entire complaint falls, and thereupon directed a verdict for the defendants.
We agree with the trial court, and while there may appear to be some real close trading among the parties, it is apparent that each party knew at all stages of the transactions, just what was going on and by whom.
■ We therefore affirm the judgment appealed from.
WIGGINTON, C. J., and SPECTOR, J., concur.